IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CV-00240-D

**Alvin D. Seaberry,**

                Plaintiff,

v.

**Carolyn Colvin**, Acting Commissioner of Social Security,

                Defendant.

**Memorandum & Recommendation**

Plaintiff Alvin D. Seaberry instituted this action on June 11, 2015, to challenge the denial of his application for social security income. Seaberry claims that Administrative Law Judge Wanda L. Wright erred in her determination by failing to order a post-hearing psychological consultation and by failing to properly evaluate his mental impairments. Both Seaberry and Defendant Carolyn Colvin, the Acting Commissioner of Social Security, have filed motions seeking a judgment on the pleadings in their favor. D.E. 18, 20.

After reviewing the parties' arguments, the court has determined that ALJ Wright reached the appropriate determination. A decision whether to order a consultative examination is well within an ALJ's sound discretion and the evidence supports her step two findings. Moreover, ALJ Wright properly considered Seaberry's mental limitations in formulating his residual functional capacity ("RFC"). Therefore, the undersigned magistrate judge recommends that the court deny Seaberry's Motion for Judgment on the Pleadings, grant Colvin's Motion for Judgment on the Pleadings, and affirm the Commissioner's decision.[1]

---

[1] The court has referred this matter to the undersigned for entry of a Memorandum and Recommendation. 28 U.S.C. § 636(b).

## I. Background

On June 30, 2012, Seaberry filed an application for supplemental security income. His application alleged a disability that began on June 1, 2009. After his claim was denied at both the initial stage and upon reconsideration, Seaberry appeared before ALJ Wright for a hearing to determine whether he was entitled to benefits. After the hearing, ALJ Wright determined Seaberry was not entitled to benefits because he was not disabled. Tr. at 17–27.

ALJ Wright found that Seaberry had the following severe impairments: degenerative disc disease of the cervical and lumbar spines and degenerative joint disease of the bilateral shoulders. *Id*. at 19. ALJ Wright also found that these impairments, alone or in combination, did not meet or equal a Listing impairment. *Id.* at 20. ALJ Wright then determined that Seaberry had the RFC to perform light work with the following limitations: he can frequently climb ramps and stairs; he can never climb ladders, ropes, or scaffolds; he can occasionally balance; he can frequently stoop, kneel, crouch, and crawl; he can never reach overhead with his bilateral upper extremities; and he must avoid concentrated exposure to moving machinery, hazardous machinery, and unprotected heights. *Id*. ALJ Wright also concluded that Seaberry was unable to perform any pat relevant work but that considering his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he was capable of performing. *Id*. at 26. These include: small parts assembler, counter clerk, and shipping/receiving weigher. *Id*. Thus, ALJ Wright found that Seaberry was not disabled. *Id*. at 27.

After unsuccessfully seeking review by the Appeals Council, Seaberry commenced this action by filing a complaint pursuant to 42 U.S.C. § 405(g) on June 11, 2015. D.E. 6.

## II.  Analysis

### A.  Standard for Review of the Acting Commissioner's Final Decision

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

### B.  Standard for Evaluating Disability

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment, the ALJ assesses the claimant's RFC to determine, at step four, whether he can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing

3

whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

### C. Medical Background

Seaberry has a history of shoulder surgeries as well as cervical and lumbar spine conditions. However, inasmuch as Seaberry only challenges ALJ Wright's determinations regarding his mental health, the court will limit its summary to his mental health records. Seaberry affirmed that he had never had any mental health treatment nor been hospitalized for mental health reasons. Tr. at 561–62. He further stated that his anxiety and depression were controlled with medications. *Id*. at 566.

Although he did not receive treatment from a mental health professional, the records of Seaberry's physical treatment include remarks on his mental status that: he was alert and fully oriented (*id*. at 602); on multiple occasions, he was noted to be awake, alert, fully oriented, cooperative, able to give his personal history, and had a normal vocabulary (*id*. at 557, 566, 620, 622, 626, 630); he complained of severe anxiety and insomnia but had no recent change in mood or behavior (*id*. at 541–42); and he was diagnosed with generalized anxiety disorder and insomnia, and he was prescribed medications (*id*. at 543). State agency consultants, Drs. Lori Souther and Eleanor Cruise, performed Psychiatric Review Technique ("PRT") assessments. *Id*. at 86–87, 99–100. Both opined that Seaberry had mild limitations in activities of daily living, social functioning, and in maintaining concentration, persistence, and pace, and that he had no episodes of decompensation. *Id*.

### D. Post-hearing consultative examination

Seaberry first contends that ALJ Wright erred by failing to order that a psychological consultative examination be performed after the hearing. Specifically, he argues that the evidence before ALJ Wright created unresolved questions as to his mental impairments, and that a consultative examination was required to resolve such issues. The Commissioner asserts that whether to order a consultative examination was within ALJ Wright's discretion and that substantial evidence supports a finding that Seaberry does not have a severe mental impairment. The court agrees.

"[T]he ALJ has a duty to explore all relevant facts and inquire into issues necessary for adequate development of the record[.]" *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The need to develop the record is only triggered where there is insufficient or inconsistent evidence. 20 C.F.R. § 404.1520b. The Regulations give an ALJ has discretion in deciding whether to order a consultative examination. *Bishop v. Barnhart*, 78 F. App'x 265, 268 (4th Cir. 2003) (finding no error in ALJ's refusal to order a consultative exam because the ALJ has discretion unless the record as a whole is insufficient to support a decision).

A consultative examination may be obtained when the record must be further developed to seek additional information or resolve inconsistencies. 20 C.F.R. §§ 404.1519, 416.919a(a). Determinations to obtain a consultative examination are made on an individual basis and in accordance with the provisions set forth in 20 C.F.R. §§ 404.1519a–f, 416.919a–f. The regulations provide that consultative examinations may be sought where the claimant's medical records are insufficient. 20 C.F.R §§ 404.1519a, 416.919a. Further, a consultative examination may be purchased "to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim." 20 C.F.R.

§§ 404.1519a(b), 416.919a(b). The Agency may pursue a consultative examination to obtain additional or updated medical evidence, including clinical findings, laboratory tests, a diagnosis or prognosis, where:

> (1) The additional evidence needed is not contained in the records of your medical sources; (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, such as death or noncooperation of a medical source; (3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources; or (4) There is an indication of a change in your condition that is likely to affect your ability to work, but the current severity of your impairment is not established.

20 C.F.R. §§ 404.1519a(b), 416.919a(b).

Here, Seaberry's medical records were consistent and sufficient; thus, ALJ Wright did not need to order a consultative examination. Two state agency consultants concluded that Seaberry did not have a severe mental impairment. Tr. at 86, 99. Additionally, a 1995 vocational rehabilitation report noted some mental deficits but did not conclude that a severe mental impairment was established. *Id.* at 262–66.

Seaberry's statements also support a finding that he did not have a severe mental impairment. When he filed his disability application, he did not state that low intellectual functioning was one of his impairments. *Id.* at 197, 229, 237. Instead, this condition was raised for the first time at the administrative hearing. *Id.* at 17. Additionally, Seaberry told a claims representative that he had no difficulty with reading, writing, understanding, or comprehension. *Id.* at 215. Seaberry's school records reflect he had failing grades but do not indicate that he attended special education classes. *Id.* at 251–54. Seaberry also completed disability reports which indicate that he did not attend special education classes. *Id.* at 198, 230.

In sum, there was sufficient evidence for ALJ Wright to conclude that Seaberry did not have a severe mental impairment of low intellectual functioning. As the evidence in the medical

6

record before ALJ Wright was neither insufficient nor inconsistent, a consultative examination was not required. Accordingly, the decision not to order a post-hearing consultative examination to evaluate Seaberry's mental condition was within her discretion. No error having been identified, Seaberry's argument on this issue lacks merit.

### E. Mental impairments

Seaberry next contends that ALJ Wright failed to conduct a Psychiatric Review Technique ("PRT") assessment to evaluate his mental limitations. He also asserts that she failed to consider his metal restrictions when formulating the RFC. The Commissioner maintains that although ALJ Wright did not explicitly utilize the PRT to address Seaberry's mental limitations in the four broad functional categories, she relied on the findings of the two state agency consultants who employed the PRT. The Commissioner further states that substantial evidence supports ALJ Wright's finding that Seaberry did not have a severe mental impairment and, therefore, such a limitation need not be included as a restriction in the RFC. The court finds that ALJ Wright's step two assessment of Seaberry's mental conditions does not warrant remand. Additionally, substantial evidence supports her RFC determination

The PRT, set forth in 20 C.F.R. §§ 404.1520a & 416.920a, is used to evaluate mental impairments at steps two and three of the sequential evaluation process. In addition to the five-step analysis discussed above, the Commissioner has promulgated additional regulations governing evaluations of the severity of mental impairments. 20 C.F.R. §§ 404.1520a, 416.920a. These regulations require application of the PRT at the second and third steps of the five-step framework, *Schmidt v. Astrue*, 496 F.3d 833, 844 n.4 (7th Cir. 2007), and at each level of administrative review. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). This technique requires the reviewing authority to determine first whether the claimant has a "medically determinable mental

7

impairment." *Id*. §§ 404.1520a(b)(1), 416.920a(b)(1). If the claimant is found to have such an impairment, then the reviewing authority must "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)," *id.* §§ 404.1520a(b)(2), 416.920a(b)(2), which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *Id*. §§ 404.1520a(c)(3), 416.920a(c)(3).

When a claimant has presented a colorable claim of mental impairment, the ALJ is required "to complete a PRTF and append it to the decision, or incorporate its mode of analysis into his findings and conclusions*." Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 726 (9th Cir. 2011) (quoting *Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005) (finding failure to complete PRT requires remand) (per curiam)); *see* 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4). *But see Pepper v. Colvin*, 712 F.3d 351, 365-67 (7th Cir. 2013) (under some circumstances, failure to use explicitly special technique may be harmless error); *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 657 (6th Cir. 2009) (holding that "the special technique of § 404.1520a does not confer such an 'important procedural safeguard' upon claimants that an ALJ's failure to rate the B criteria will rarely be harmless"). "The ALJ's decision must show the significant history and medical findings considered and must include a specific finding as to the degree of limitation in each of the four functional areas." *Felton-Miller v. Astrue*, 459 F. App'x 226, 231 (4th Cir. 2011) (per curiam) (citing 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4)). "In other words, the regulations contemplate that written decisions at the ALJ and Appeals Council levels should contain a 'narrative rationale,' instead of the 'checklist of...conclusions' found in a PRTF." *Keyser*, 648 F.3d at 725 (alteration in original).

8

The question presented, therefore, is whether Seaberry has presented a colorable claim of a mental impairment. In the present case, ALJ Wright's decision does not contain specific findings for each of the four broad functional categories. ALJ Wright discussed his depression and anxiety but found that they were not severe impairments. Tr. at 20. In making that conclusion, she noted that Seaberry had not received care from a mental health professional, that his treatment was limited to medications, and that two state agency consultants found that these conditions were not severe impairments. *Id*. at 86, 99.

Nonetheless, regardless of the severity of these conditions, Seaberry undoubtedly has presented a colorable claim of a mental impairment. He has put forth evidence of his anxiety and depression sufficiently enough that these conditions were addressed by ALJ Wright in her decision and also considered by the two state agency consultants in determining whether they presented more than a minimal limitation on his ability to engage in work-related activity. Thus, he has stated a colorable claim.

Although she did not make explicit findings as to Seaberry's degree of limitation in the four broad functional areas, ALJ Wright implicitly made such findings when she adopted the opinions of the state agency consultants, both of whom employed the PRT in evaluating Seaberry's mental impairments. The court must therefore determine whether the adoption of such an opinion constitutes substantial evidence to support ALJ Wright's determination.

In order for the court to engage in substantial evidence review, there must be a clear basis for the ALJ's ruling. *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013); *see also Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984). Citing to state medical opinions in support of an ALJ's conclusion, in itself, is not enough to constitute "substantial evidence." *Id.* "Even if the ALJ's exclusive citation to those opinions indicates the (apparently very high) evidentiary weight

9

placed on them, it does not indicate why the opinions merit that weight." *Id.* (emphasis in original). Accordingly, under *Radford*, the ALJ must explain why he believes the state agency opinions merit "great weight" and not simply adopt them without support in the record. *Id.*

Here, ALJ Wright adopted the findings of the state agency consultants, both of whom concluded that Seaberry did not have a severe mental impairment. Tr. at 20. In making that finding, both Drs. Souther and Cruise determined that Seaberry had mild limitations in activities of daily living, social functioning, and maintaining concentration, persistence, or pace, and that he had no extended episodes of decompensation. *Id.* at 86, 99. In affording significant weight to these findings, ALJ Wright noted that the opinions were consistent with the medical evidence of record which indicated that Seaberry's mental limitations were not as severe as he alleged. *Id.* at 24. She noted that the record reflected that he was not treated by a mental health professional, he received neither inpatient nor outpatient treatment, and that examination showed he was alert and oriented with normal mood and affect. *Id.*

Thus, ALJ Wright did not simply adopt the state agency consultants' assessments of Seaberry, but instead cited to objective evidence in the record in explaining why she believed these opinions merited significant weight. This is a sufficient explanation to meet the requirement of substantial evidence. Thus, ALJ Wright did not err by adopting the conclusions of the state agency consultants. *See Gabriel v. Colvin*, No. 1:14-cv-270, 2015 WL 4591591 (W.D.N.C. Jul. 29, 2015) (no error by ALJ in adopting state agency's assessment of PRT where there is a sufficient explanation to meet the requirement of substantial evidence).

Finally, with respect to Seaberry's claim of illiteracy, ALJ Wright committed no error. As the Commissioner points out, illiteracy is not a severe impairment at step two but a vocational factor to be considered at step five. 20 C.F.R. § 404.1564(b)(1). Although he alleged an inability

10

to read and write, ALJ Wright did not find this claim to be credible. She stated that Seaberry reported to SSA field office staff that he could read and write more than his name, that he could provide his personal history, that he had normal vocabulary, that although his school records showed failing grades, they also reflected considerable absences from school, that he had been able to maintain steady employment and obtain his driver's license. Tr. at 20. Thus, substantial evidence supports a conclusion that Seaberry was not functionally illiterate.

Additionally, ALJ Wright's hypothetical questions to the VE included one with the limitations assessed in her decision as well as one incorporating a limitation to functional illiteracy. *Id.* at 66–67. The VE stated that there were jobs existing that such a person could perform, small parts assembler (DOT: 706.684-022) and laundry folder (DOT: 369.687-018). *Id.* at 67–68. Therefore, even if Seaberry were further restricted by his literacy, the Commissioner's step five burden was satisfied by the identification of jobs which were available despite a literacy restriction.

Given that his mental restrictions were considered by ALJ Wright but not fully credited, and that substantial evidence supports this determination, Seaberry's argument constitutes mere disagreement, rather than error, with the decision. Consequently, a basis for remand has not been established and the Commissioner's decision should be affirmed.

### III. Conclusion

For the forgoing reasons, the court recommends that Seaberry's Motion for Judgment on the Pleadings (D.E. 18) be denied, that Colvin's Motion for Judgment on the Pleadings (D.E. 20) be granted, and that the Commissioner's final decision be affirmed.

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on each of the parties or, if represented, their counsel. Each party shall

have until 14 days after service of the Memorandum and Recommendation on the party to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Owen v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Dated: June 22, 2016

*[signature: Robert T. Numbers II]*

ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE